IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATRICIA WALKER, Individually
and in her Capacity as
Administrator of the Estate of
DONALD HAMILTON, deceased,

    Plaintiff,

v.

CITY OF ATLANTA, a Municipal
Corporation of the State of
Georgia; ANDREW TADDEI,
Individually and in his
official capacity as a Police
Officer of the City of Atlanta;
ADAM WRIGHT, Individually and
in his official capacity as a
Police Officer of the City of
Atlanta; COREY SAUBERAN,
Individually and in his
official capacity as a Police
Officer of the City of Atlanta;
RICHARD PENNINGTON,
Individually and in his
official capacity as Chief of
Police of the City of Atlanta;
and John Does 1-15,
Individually and in their
official capacity as Police
Officers of the City of
Atlanta,

    Defendants.

CIVIL ACTION NO.

1:11-cv-1167-JEC

## ORDER AND OPINION

This case is before the Court on Defendants' Motion to Dismiss [2]. The Court has reviewed the record and the arguments of the

parties and, for the reasons set out below, concludes that Defendants' Motion to Dismiss [2] should be **DENIED**.

## BACKGROUND

The present action arises out of plaintiff's allegations of defendants' use of excessive force that resulted in the death of plaintiff's son, Donald Hamilton.

On May 8, 2008, Hamilton and a friend went to a club in Atlanta, Georgia. (Compl. [1] at ¶ 16.) Following a verbal altercation with a bathroom attendant, Hamilton was escorted off the premises by an off-duty Atlanta police officer. (*Id.* at ¶¶ 17-18.) After his ejection, Hamilton's friend attempted to convince the off-duty officer to allow Hamilton back into the club, but the officer refused to do so. (*Id.* at ¶¶ 19-20.)

While Hamilton was waiting for his friends to leave, he began to walk down the street. (*Id.* at ¶ 21.) By this time in the evening, however, Hamilton appeared visibly drunk, was randomly talking to people, and openly brandishing a gun, prompting the bystanders who witnessed this behavior to dial 911. (*Id.* at ¶ 22.)

Defendants Taddei, Wright, and Sauberan (collectively, the "officers"), were dispatched to Hamilton's location. (*Id.* at ¶ 24.) Upon arrival, the officers, with guns drawn, instructed Hamilton, who was still holding the firearm, to put his hands up. (*Id.* at ¶ 25.) As Hamilton was complying with their orders, the officers discharged

2

their weapons, wounding him in his arms and legs. (*Id.* ¶ 26.) Defendant Wright then handcuffed him. (*Id.* at ¶ 27.) Despite the fact that Hamilton was subdued, wounded, and in handcuffs, defendant Wright shot Hamilton in the back of the head, killing him instantly. (*Id.*) After shooting Hamilton, the officers planted a "throw down knife" in his buttocks to suggest that he still posed a threat to them at the time he was shot and killed. (*Id.* at ¶ 32.)

On August 27, 2008, plaintiff's counsel sent the City of Atlanta ("the City") an ante litem notice regarding, amongst other claims, Hamilton's wrongful death. (*Id.* at ¶ 11.) On September 8, 2008, Gwendolyn Burns, a claim investigator for the City, wrote to plaintiff's counsel to inform her that she had received the notice, would investigate the claim, and would report her findings to the City Attorney for a recommendation to the City Council. (Sept. 8, 2008 Letter from Gwendolyn Burns, attached to Pl.'s Resp. [7] as Ex. B.) In the letter, Ms. Burns told counsel that "[i]n the event that your claim receives an unfavorable recommendation, you will be notified of this action through the office of the Clerk of Council." (*Id.*)

Hearing no update from the City, plaintiff's counsel wrote to Ms. Burns on June 28, 2010, to check on the status of her client's claim. (June 28, 2010 Letter from Pl.'s Counsel, attached to Pl.'s Resp. [7] at Ex. C.) Plaintiff's counsel did not receive a response

3

from the City.  (Pl.'s Counsel's Aff. at ¶ 3, attached in supp. of Pl.'s Resp. [7].)

In the time between Ms. Burn's September 2008 letter and plaintiff counsel's June 2010 letter, however, the City had, on April 20, 2009, denied plaintiff's claim.  (Claim Denial, attached to Defs.' Mot. Dismiss [2] at Ex. B.)  Four days later, on April 24, 2008, the City's Municipal Clerk's Office issued a letter addressed to plaintiff's counsel notifying her that her client's claim had been denied by the City Council.  (Apr. 24, 2008 Letter from Rhonda Dauphin Johnson, Municipal Clerk, attached to Defs.' Mot. Dismiss [2] at Ex. B.)  Plaintiff's counsel states that she never received this letter.  (Pl.'s Counsel's Aff. [7] at ¶ 2.)

On April 1, 2011, plaintiff counsel's paralegal discovered that the City had denied plaintiff's claim two years before.  (Pl.'s Counsel's Paralegal's Aff. at ¶ 3, attached in supp. of Pl.'s Resp. [7].)  Ten days later, on April 11, 2011, plaintiff filed the underlying action asserting claims under 42 U.S.C. § 1983.  (Compl. [1].)  Arguing that the statute of limitations has run on her claims, defendants now file the present motion to dismiss [2].

AO 72A
(Rev.8/82)

**DISCUSSION**

I. **MOTION TO DISMISS STANDARD**

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true and construes all of the facts in favor of the plaintiff. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005)(citation omitted). That said, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the "claim has facial plausibility." *Id.*

A court must undergo a three-step analysis when considering a Rule 12(b)(6) motion to dismiss. The court first must identify each element of the cause of action and then identify the allegations that are not entitled to the "assumption of truth." *Id.* at 1950-51. The court must disregard "[l]egal conclusion[s] couched as [] factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-51. Finally, the court must consider the remaining well-pleaded factual allegations to determine if they "plausibly" suggest an entitlement to relief. *Id.* at 1950.

5

## II. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFF'S CLAIMS

Claims brought under 42 U.S.C. § 1983 are torts, subject to the statute of limitations governing personal injuries in the state where the § 1983 action has been brought. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Georgia, the two-year time frame set forth in O.C.G.A. § 9-3-33 governs § 1983 actions. *Brown v. Lewis*, 361 Fed. App'x 51, 54 (11th Cir. 2010)(citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

While a § 1983 plaintiff need not comply with state exhaustion requirements prior to filing suit in federal court, if he chooses to do so, a court must give him the benefit of any tolling period created by his compliance. *Lawson v. Glover*, 957 F.2d 801, 806 (11th Cir. 1987). The applicable exhaustion statute in the present matter is O.C.G.A. § 36-33-5, which requires that, prior to filing a tort against a municipality, a plaintiff "present[s] the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." *Info. Sys. and Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1228 (11th Cir. 2002)(citing O.C.G.A. § 36-33-5(b)). Following notice to the municipality, the claimant cannot file suit until either the municipality acts on the claim or 30 days have passed. *Id.* (citations omitted).

6

In applying O.C.G.A. § 36-33-5, a court should calculate the time between when the cause of action arose and when the suit was commenced--which is thirty-five (35) months in the present case--and subtract from that number the time the claim was pending with the municipality. *See Simon v. City of Atlanta*, 287 Ga. App. 119, 121 (2007)(demonstrating how O.C.G.A. § 36-33-5(c)-(d) is to be applied). This second number--the time the claim was pending with the City--is the sole point of dispute between the parties. Indeed, the parties agree as to how to calculate the time period: that is, the time period is measured from the date the City received ante litem notice to the date the City notified plaintiff of the City's denial. (*See* Def.'s Reply [8] at 1)("[i]t appears that the only issue left for the court to resolve is the issue of receipt of notice of the denial to opposing counsel.")

Defendants contend that plaintiff received notice on April 24, 2009,[1] which was the date the Municipal Clerk allegedly mailed plaintiff's counsel notice of the City's denial. If accurate, this would mean that the claim was pending for eight (8) months and,

---

[1] Whether or not O.C.G.A. § 36-33-5 or *Simon* requires a municipality to send notice of denial and the plaintiff to actually receive said notice is not presently before the Court. Defendants choose April 24, 2009, the date a letter was allegedly mailed to plaintiff's counsel, as opposed to April 20, 2009, the date the claim was denied, as the operative date for the running of the statute of limitations.

7

accordingly, the statute of limitations was tolled for that same period of time. Plaintiff, however, contends that she did not receive notice of denial in 2009 and that she only learned of the denial on April 1, 2011, the date her counsel's paralegal discovered that the City had denied her claim. Plaintiff's calculation means that the claim was pending for thirty-two (32) months, and the statute of limitations was tolled for the same period of time. Using defendants' date, the operable accrual time is twenty-seven (27) months, three months beyond the two-year statute of limitations. Using plaintiff's date, the operable accrual time is only a bit over three (3) months, well within the two-year period.

In examining the present evidence, the Court concludes that defendants have failed to show that a denial letter was even sent, much less that plaintiff received notice of the denial. In an effort to prove the contrary, defendants offer the declarations of Gwendolyn Burns, Interim Claims Manager for the City of Atlanta, and Rhonda Dauphin Johnson, the Municipal Clerk of the City of Atlanta. Neither is sufficient.

Ms. Burns, who works as a claims manager for the City, is in no position to know whether the Municipal Clerk's office mailed the April 24th denial letter to plaintiff's counsel, as her September 8, 2008 letter indicated would happen in the event of a denial of plaintiff's claim. Ms. Johnson's conclusory declaration also fails

to establish the mailing of the April 24th letter.  Ms. Johnson, who is the City's Municipal Clerk, essentially states that her office is in the practice of mailing and filing copies of notification letters bearing her signature.  (Johnson Decl. at ¶¶ 5-6, attached in supp. of Defs.' Reply [8].)  Other than these two declarations, which together amount to evidence merely that the Municipal Clerk's office should have and probably did mail the April 24th letter, defendants offer no other proof of mailing.

In contrast, plaintiff submits the affidavit of her counsel who unequivocally asserts that counsel did not receive the April 24, 2009 denial notice.  (Pl.'s Counsel's Aff. [7] at ¶ 2.)  The fact that counsel sent a letter to Ms. Burns in June 2010 requesting the status of her client's claim *after* Ms. Johnson's office allegedly sent counsel notice of the City's denial tends to corroborate plaintiff's contention that the City did not mail notice of its denial to her attorney.  Counsel did not receive a response from Ms. Burns.[2]  (*Id.* at ¶ 3.)

Finally, defendants' reliance on the "[mailbox] presumption" is misplaced, as defendants do not adequately demonstrate that the City mailed the April 2009 letter.  *See Rosenthal v. Walker*, 111 U.S. 185, 193-194 (1884)(a letter properly mailed is presumed to have been

---

[2] Ironically, defendants obliquely suggest that the City did not receive plaintiff counsel's letter.  (Defs.' Reply [8] at 3.)

9

received by the addressee); *see also Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1239 (11th Cir. 2002); *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996). Equally important, despite how the parties frame the matter, the issue is not necessarily whether or not plaintiff *received* notice of the City's denial letter, but whether the City *sent* notice of the denial letter. Regardless, the "[mailbox] presumption" is not unrebuttable, *Rosenthal*, 111 U.S. at 193-94 (the presumption is "a mere inference of fact"), and plaintiffs have submitted sufficient evidence to do so.

With no other proposed dates of notice before it, the Court adopts plaintiff's suggested date of April 1, 2011 as the date on which plaintiff became aware of the City's denial and as the date on which tolling stopped. As such, the Court finds that the two-year statute of limitations has not run on plaintiff's suit, and hereby **DENIES** Defendants' Motion to Dismiss [2].

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss [2].

AO 72A
(Rev.8/82)

So ORDERED this 14th day of MARCH, 2012.

>/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)